**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JUAN ANTONIO GONZALEZ,

Petitioner,

v.

ERNESTO SANTACRUZ JR., et al.,

Respondents.

No. 2:26-cv-08978-DSR

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING IMMEDIATE RELEASE**

## 1. INTRODUCTION AND PROCEDURAL BACKGROUND

On August 12, 2026, Petitioner Juan Antonio Gonzalez ("Petitioner"), a noncitizen who has been detained in U.S. Immigration and Customs Enforcement ("ICE") custody since on or about July 15, 2026, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") challenging his ongoing detention as violative of, inter alia, his right to due process. See Doc. No. 1. The Petition names as Respondents the Acting Director of ICE, the Acting Director of the Los Angeles Field Office of ICE, the Secretary of the Department of Homeland Security, and the Attorney General of the United States, each in his or her official capacity (collectively "Respondents"). Id. Petitioner seeks relief in the form of a Writ of Habeas Corpus ordering his immediate release from immigration custody. Id., prayer ¶ 4.

Concurrently with filing the Petition, Petitioner voluntarily consented under 28 U.S.C. § 636 to have a Magistrate Judge conduct all further proceedings in this

case, including trial and entry of judgment. See Doc. No. 2. The case became fully consented to three days later pursuant to the United States Attorney's Office General Consent to Disposition by Magistrate Judge in Immigration Habeas Cases. See General Order 26-05 at Ex. "A" (Doc. No. 5); see also Doc. No. 8.

On August 12, 2026, the Clerk of Court served the Petition on Respondents pursuant to General Order No. 26-05, along with a Notice of that General Order. See Doc. No. 4. On August 19, 2026, Respondents filed their Answer to the Petition. See Doc. No. 6. In their Answer, Respondents do not dispute any of the facts alleged in the Petition nor attempt to justify their detention of Petitioner without a bond hearing. See generally id. Rather, they contend that "Petitioner appears to be entitled to request and receive an initial bond hearing pursuant to Rodriguez Vasquez v. Bostock, --- F.4th ---, 2026 WL 2196424 (9th Cir. 2026) (finding 'that aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A).')." Id. at 2:3-7. On that basis, Respondents argue that Petitioner is "at most" entitled to an order from the Court that he receive a bond hearing before an Immigration Judge under 8 U.S.C. § 1226(a). Id. at 2:14-16. On August 20, 2026, Petitioner filed his Traverse to Respondent's Answer. See Doc. No. 7.

The Court has read and considered all papers filed by each side. For the reasons discussed below, the Court GRANTS the Petition for Writ of Habeas Corpus and orders that Respondents immediately release Petitioner from immigration custody.

**2. FACTUAL BACKGROUND**

The Court sets forth a summary of the relevant factual background based on the facts alleged in the verified Petition. Respondents had the opportunity to dispute the facts alleged in the Petition, but declined to do so. See Doc. No. 6. Accordingly, those facts are undisputed and have been conceded by Respondents. See C.D. Cal. L.R. 7-12.

Petitioner is a native and citizen of El Salvador. See Pet. at ¶ 26. He entered the United States in approximately 1998, and "was not encountered or apprehended by immigration officials at or near the border." Id. Petitioner was subsequently granted Temporary Protected Status ("TPS") from 2001 until 2025 by U.S. Citizenship and Immigration Services ("USCIS"). Id. at ¶ 8. On January 24, 2025, USCIS rejected Petitioner's timely application to renew his TPS. Id. On May 21, 2026, ICE issued Petitioner a Notice to Appear thereby initiating removal proceedings against him. Id. at ¶ 46. Petitioner contends that he was never made aware of this, however, as the Notice to Appear "mistakenly listed his address as that of a small law firm in Arizona where he has never been a client." Id.

On July 15, 2026, Petitioner was arrested and detained by ICE while walking to a gym in Inglewood, California. Id. at ¶¶ 1, 26, 45. "Respondents did not present a properly executed warrant for Petitioner's arrest before the detention and arrest of Petitioner." Id. at ¶ 27. Nor did, "[t]he officers [tell] Petitioner who they were or why they were arresting him" or provide Petitioner with "any prior notice, hearing, or neutral determination that his detention was justified." Id. at ¶¶ 45, 77.

Several minutes following Petitioners arrest, Petitioner began to experience severe pains in his chest and trouble breathing. Id. at ¶ 28. The officers drove Petitioner to a nearby hospital, where he diagnosed with "Tuberculosis (latent), Kidney and Renal Cysts, Cystic Kidney Disease, Hyperlipidemia, renal wall lesions, bladder wall thickening, Anxiety, and Depression. Doctors are also continuing to monitor Petitioner's substemal exertional chest pain with associated dyspnea and bradyarrhythmia, 'which places him at increased risk for chest pain, dyspnea, dizziness, syncope, and falls, necessitating close cardiac monitoring and immediate access to medical intervention." Id. at ¶ 29.

On July 30, 2026, Petitioner submitted, through counsel, an official request to ICE's Los Angeles Field Office requesting them to consider Alternatives to

Detention ("ATD") in Petitioner's case in light of his medical condition. Id. at ¶ 31. The request included a letter from Petitioner's treating physicians which stated they "consider discharge into detention high-risk for the health of [Petitioner]" given Petitioner's susceptibility to infectious disease and the specialized care needed to monitor Petitioner's existing medical condition. Id. at ¶ 31. On August 5, 2026, Petitioner was informed that his request for ATD was denied, without being provided any reasoning or rationale. Id. at ¶ 33. At the time of the filing of the instant Petition, Petitioner was still hospitalized. Id. at ¶ 1.[1]

**3. CLAIMS AND RELIEF SOUGHT**

The Petition asserts four claims for relief: (1) Respondents' warrantless arrest and failure to "make a pre-detention individualized finding of flight" violates 8 U.S.C. §§ 1226(a) and 1357(a)(2), see Pet. at ¶¶ 79-82; (2) Respondents' arrest of Petitioner constitutes an unreasonable seizure in violation of the Fourth Amendment, id. at ¶¶ 83-87; (3) Petitioner's re-detention without a pre-deprivation hearing violates the Due Process Clause of the Fifth Amendment, id. at ¶¶ 88-91; and (4) Respondents' denial of Petitioner's ATD request without a reasoned explanation constitutes arbitrary and capricious agency action in violation of the Administrative Procedure Act, id. at ¶¶ 92-93.

Petitioner seeks relief in the form of a Writ of Habeas Corpus "ordering the immediate release of Petitioner with all medical records from his time in Respondents' custody" as well as enjoining Respondents from "removing Petitioner from the United States without the procedures for removal identified in the [Immigration and Nationality Act][.]" Id., prayer ¶¶ 4, 6. Finally, the Court notes that Petitioner requests an award of reasonable attorney's fees and costs. Id., prayer ¶ 7.

---

[1] Petitioner asserts in his Traverse that on August 14th (two days after filing the Petition), he was discharged from the hospital and taken to the ICE Processing Center in Adelanto. See Doc. No. 7 at ECF p. 4, lns.13-15.

**4. LEGAL STANDARD AND THE EXHAUSTION REQUIREMENT**

Habeas relief extends to those who can show they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Although Congress has barred courts from reviewing certain discretionary decisions concerning detention or release of noncitizens subject to removal proceedings, see 8 U.S.C. §§ 1226(e), 1252(g), federal courts retain jurisdiction to "review related 'constitutional claims or questions of law.'" Martinez v. Clark, 36 F.4th 1219, 1224 (9th Cir. 2022) (quoting Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011)), vacated on other grounds by ___ U.S. ___, 144 S. Ct. 1339, 218 L.Ed.2d 418 (2024). Petitioner makes such reviewable claims here, and Respondents do not contest the point.

Habeas petitioners seeking relief under 28 U.S.C. § 2241 generally must first exhaust all available administrative remedies. See Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012). However, because this requirement is "prudential" and not a "jurisdictional prerequisite," it is subject to waiver. Id. at 1045-46; Arango Marquez v. INS, 346 F.3d 892, 897 (9th Cir. 2003) ("[T]he district court properly waived exhaustion, because the exhaustion requirement in § 2241 cases is prudential, rather than jurisdictional.").

Generally, prudential exhaustion may be required where the following factors are met: "(1) agency expertise makes consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (citation omitted). Even if the Puga factors weigh in favor of prudential exhaustion, courts may waive the prudential exhaustion requirement if the petitioner demonstrates one of the following factors applies: (1) "administrative remedies are inadequate or not efficacious," (2) "pursuit of administrative

remedies would be a futile gesture," (3) irreparable injury would result," or (4) "the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (citations omitted).

Respondents here argue in their Answer that "to the extent the instant Petitioner has not yet requested [] a bond hearing from the Immigration Court, the Petitioner has not yet properly exhausted his available administrative remedies, and his Petition is defective on that basis." Answer (Doc. No. 6) at 2:17-19. Even if the Court assumes that the Puga factors apply, however, Petitioner's pursuit of administrative remedies would be inadequate and futile. The administrative remedy Respondents suggest—a post-deprivation bond hearing before an Immigration Judge (Answer at 2:17-26)—would be incapable of addressing the injury alleged. Petitioner asserts that the original constitutional transgression occurred when ICE detained him without a pre-deprivation hearing before a neutral decisionmaker. A post-deprivation bond hearing would not address the propriety of Petitioner's claim—that he was not afforded constitutionally adequate procedural safeguards prior to the deprivation of his liberty interest. See Padilla v. Mullin, No. 3:25-cv-270-ART-CSD, 2026 WL 1245462, at *3 (D. Nev. May 6, 2026) ("[Petitioner's] challenge falls squarely into the futility exception to prudential exhaustion … [Petitioner's] claim is that he was entitled to process before DHS could detain him, and that the Government's failure to provide him with pre-deprivation process makes his detention unconstitutional … No post-detention custodial hearing could fully address [Petitioner's] complaint or award him sufficient relief."). Thus, waiver of the prudential exhaustion requirement is appropriate, and the Court will proceed to consider the case on the merits.

## 5. DISCUSSION

### A. Petitioner's Detention Violates Due Process

Petitioner argues that his July 15, 2026, arrest and detention without notice or a pre-deprivation hearing violates the Due Process Clause of the Fifth

Amendment. See Pet. at ¶¶ 88-91. Respondents do not directly address Petitioner's entitlement to a pre-deprivation hearing, arguing only that "Petitioner is properly detained pending such potential bond proceedings because this is the Petitioner's first detention; he was not previously released from immigration detention or paroled." See Answer (Doc. No. 6) at 2:12-14.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const. amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" Id. at 990 (quoting Singh, 638 F.3d at 1203).

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." Brewster v. Bd. of Ed., 149 F.3d 971, 982 (9th Cir. 1998). The first step is to determine whether the individual possesses a liberty or property interest that triggers due process protections. Board of Regents v.

Roth, 408 U.S. 564, 569 (1972). If such a constitutionally protected interest exists, the second step applies a three-step balancing test described in Mathews v. Eldridge to assess what procedural safeguards are required. Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976). Only after establishing a constitutionally protected interest does the analysis proceed to the second step.

**i. Petitioner Has a Constitutionally Protected Liberty Interest in His Release following the Grant of Temporary Protected Status**

It is undisputed that Petitioner has resided in the United States for roughly twenty-seven years and that Petitioner was granted TPS from 2001 until 2025. Numerous Federal Courts within the Ninth Circuit have recognized a constitutionally protected liberty interest in the conferral of TPS. See e.g., Garcia v. Albarran, No. 26-cv-04839, 2026 WL 1454512, at *2 (N.D. Cal. May 21, 2026) ("[Petitioner's] TPS status represents a determination by the Government that he was neither a flight risk nor a danger to the community, and he has a strong interest in remaining at liberty unless he no longer meets those criteria."); Pedro M.T.M v. Warden, California City Correction Ctr., No. 1:26-cv-04862-MWJS, 2026 WL 1983261, at *1 (E.D. Cal. July 8, 2026) ("Petitioner was granted TPS that remained valid after his B-2 visa expired … The mere fact that Petitioner's TPS has expired does not, standing alone, show that he has suddenly become a danger to the community or a flight risk—especially given the government's decision to allow him to remain at liberty for more than two months after the expiration."); Diaz-Aguero v. Noem, No. 2:26-cv-00637-TLF, 2026 WL 915053, at *3 (W.D. Wash. Apr. 3, 2026) (holding that petitioner acquired protected liberty interest in freedom from release on parole and subsequent grant of TPS); see also Kharitonova v. Albarran, No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) ("Although the government did not detain and release her, it made a decision not to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained.").

Petitioner's liberty interest in his freedom arising from the government's decision to allow him to live freely in the country under TPS has only been strengthened by the length of time that he has been living in the United States. See, e.g., Doe v. Becerra, 787 F.Supp.3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Prior to his July 15th detention by ICE, Petitioner lived continuously in the United States for roughly twenty-seven years (roughly twenty-four years of which he has been permitted to live freely in the community under his TPS designation). See Pet. at ¶¶ 7-8. During that time Petitioner has formed "strong familial and community ties," including obtaining lawful employment, and taking care of his mother and two nephews. Id. at ¶ 61. While Respondents have now initiated removal proceedings against Petitioner, Petitioner nevertheless has a strong interest in his continued liberty while his removal case proceeds in Immigration Court. The question then becomes whether he was deprived of that interest without adequate procedural protections. See Brewster, 149 F.3d at 982.

**ii. Respondents' Deprivation of Petitioner's Liberty Interest Failed to Comply with the Requirements of Due Process**

To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Mathews, courts balance the following three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of

an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."). Here, the balance favors Petitioner.

**a. Private Interest**

Petitioner's private interest is substantial. As discussed above, Petitioner has a recognized interest in his liberty pursuant to his prior grant of TPS. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process Clause] protects." Id. at 690. As such, the first Mathews factor weighs strongly in Petitioner's favor.

**b. Risk of Erroneous Deprivation**

Regarding the second Mathews factor, the risk of erroneous deprivation through the procedures used is significant here because there do not appear to have been any procedures used to determine whether there were grounds to detain Petitioner, at least prior to his July 15th detention. Petitioner alleges that he was "arrested and detained … without an arrest warrant and without any prior notice, hearing, or neutral determination that his detention was justified." Pet. at ¶ 77. Respondents do not contest these allegations. See generally Answer.

Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690. Petitioner's "TPS status represents a determination by the

Government that he was neither a flight risk nor a danger to the community[.]" Garcia v. Albarran, 2026 WL 1454512, at *2. Respondents do not allege that there were any changed circumstances justifying reconsideration of that determination. See generally Answer. Nonetheless, even if there was, a pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence. This is a significant procedural safeguard. Without written notice and a meaningful, individualized hearing, "the risk of an erroneous deprivation of liberty is high because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for his detention." Fernandez v. Semaia, No. 5:25-CV-03412-SPG-MBK, 2026 WL 136229, at *5 (C.D. Cal. Jan. 13, 2026). As one court has reasoned:

> ICE revoked Petitioner's release at a scheduled check-in based solely on internal ATD entries, without prior written notice, without specifying the alleged violations in advance, and without any meaningful opportunity to be heard. [Citations omitted]. Proceeding on untested contractor and agency records, with no mechanism for explanation or correction, creates a significant risk of error. Moreover, Petitioner had previously been found suitable for humanitarian parole, which requires that a noncitizen "present neither a security risk nor a risk of absconding[.]" [Citation omitted]. A brief pre-deprivation hearing would have substantial value in testing both the factual and legal basis for re-detention.

Asad v. Noem, No. 26-cv-620, 2026 WL 775628, at *3 (W.D. Wash. Mar. 19, 2026). Thus, the second Mathews factor similarly favors Petitioner in this case.

**c. Government Interest**

Regarding the third Mathews factor, Respondents do not assert any countervailing interest. Nevertheless, "[t]he government interest in immigration enforcement in general is surely substantial." Zerezghi v. United States Citizenship & Immigr. Servs., 955 F.3d 802, 810 (9th Cir. 2020). As in Zerezghi, however, that is not the interest that needs to be weighed in this case. The government interest at issue here is revocation of Petitioner's conditional liberty interest in his freedom pending the outcome of removal proceedings, and in doing so without any hearing. Courts have routinely recognized that such interest is "low." See, e.g., Gourav v. Janecka, No. EDCV 26-01253-MWF-DSR, 2026 WL 966568, at *3 (C.D. Cal. Apr. 7, 2026); Fernandez Lopez v. Wofford, No. 1:25-CV-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025); Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025). "This is particularly so where the Government has not shown — or, as here, attempted to substantively argue — that Petitioner's detention serves either to prevent flight or a danger to the community." Gourav, 2026 WL 966568, at *3 (internal quotations and citations omitted).

Thus, the Matthews balance tips decidedly in favor of Petitioner on this record. The Court therefore concludes that the revocation of Petitioner's conditional liberty interest following the grant of TPS, and his resulting detention on July 15, 2026, without notice or a pre-deprivation hearing violated Petitioner's procedural due process rights. See e.g., Garcia, 2026 WL 1454512, at *2-3; Paso v. Warden, California City Detention Center, No. 1:26-cv-05885-TLN-CKD-P, 2026 WL 2280957, at *2-3 (E.D. Cal. Aug. 7, 2026), report and recommendation adopted sub nom, P.P. v. Warden, California City Detention Center, 2026 WL 2392881 (E.D. Cal. Aug. 17, 2026).

### B. The Availability of a Bond Hearing Does Not Cure the Earlier Due Process Violation

Respondents do not address in their Answer any of the substantive reasons Petitioner alleges his detention is unlawful. The sole argument they raise in response to this Petition is that Petitioner's remedies are limited to this Court ordering a bond hearing under 8 U.S.C. § 1226(a) (which judging from Respondent's argument, he has not received notwithstanding the Judgment in Maldonado Bautista v. Santacruz, No. 5:25-cv-01873-SSS-BFM). See Answer at 2:12-16. Respondents also note that "Petitioner can seek a Rodriguez bond hearing in the Immigration Court after 180 days of total detention time." Id. at 2:23-24. Thus, Respondents conclude, "because the Petitioner has an adequate remedy for his complaint of unjustified detention, the Petition should be denied, and judgment should be entered for the Respondents." Id. at 2:23-26.

To the extent that Respondents are attempting to argue that Petitioner's due process claim should fail because post-deprivation process (specifically, a bond hearing) satisfies the Fifth Amendment here, the Court disagrees. A post-deprivation hearing cannot satisfy the requirements of due process in these circumstances. Offering a detainee a hearing on the revocation of his constitutionally protected interest in release only after he has already been detained (for six months in the case of a Rodriguez hearing) and affirmatively requests such a hearing does not satisfy the Fifth Amendment on the record before the Court.

Due process generally includes an opportunity for some type of hearing before the deprivation of a protected property interest." Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1317 (9th Cir. 1989) (emphasis added) (citing Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 19, (1978); Sinaloa Lake Owners Ass'n v. City of Simi Valley, 864 F.2d 1475, 1481-82 (9th Cir.1989)). While Courts have recognized that a post-deprivation hearing can sometimes satisfy the requirements

of due process, that is the exception, not the rule. See Soranno's Gasco, 874 F.3d at 1317 (noting that there are "exceptions to the pre-deprivation hearing requirement" permitting post-deprivation procedures such as "the necessity of quick action by the State or the impracticability of providing any meaningful predeprivation process"). Indeed, the Supreme Court has held "[w]e tolerate some exceptions to the general rule requiring pre-deprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." United States v. James Daniel Good Real Prop., 510 U.S. 43, 53 (1993) (internal quotations and citations omitted); see also Shinault v. Hawks, 782 F.3d 1053, 1058 (9th Cir. 2015) ("post-deprivation process can suffice 'in limited cases' when prompt action is required, an important government interest is involved, and there is substantial assurance that the deprivation is not baseless or unwarranted.").

Respondents have not offered any "necessity of quick action" or "impracticability of providing any meaningful predeprivation process" to justify reliance on post-deprivation process for revocation of Petitioner's liberty interest, let alone a Rodriguez hearing that is not available until six months after the revocation and detention. It would not have been "impracticable" for immigration authorities to provide Petitioner with meaningful pre-deprivation process before detaining him during the roughly one year that followed the expiration of Petitioner's TPS. The record before this Court does not support the post-deprivation exception to the general rule requiring pre-deprivation notice and an opportunity to be heard.

### C. Immediate Release is the Appropriate Remedy

Given that Petitioner has established that his detention violates his due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, No. 5:25-cv-2694-KK-ADS, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested

status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release from immigration custody prior to his detention on July 15, 2026. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, No. 2:25-cv-8325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Restoring Petitioner to the status quo also means release under the same conditions that were in place before the wrongful deprivation of that status. Given the apparent expiration of Petitioner's TPS, it is unclear whether he was subject to any conditions prior to his July 15, 2026, detention by ICE. If he was, however, those conditions are the status quo, and they should remain in place. Respondents may not change or add to those conditions, however, without affording Petitioner due process. Return to the status quo similarly means return to Petitioner any personal property and documents seized at the time of his detention.[2]

Because the Court finds that immediate release is warranted on procedural due process grounds, it is unnecessary to consider Petitioner's alternative statutory and constitutional claims attacking the legality of his detention.

---

[2] Respondents offer no argument against Petitioner's request that he be provided with all medical records from his time in Respondents' custody. As such, the Court grants this request as unopposed. See L.R. 7-12. To the extent Respondents have in their possession, custody, or control any of Petitioner's medical records, those should also be returned to Petitioner upon his release.

**D. Petitioner Is Not Entitled to an Injunction Against His Removal**

In addition to a Writ ordering his immediate release, Petitioner also prays for an injunction barring "Respondents from removing Petitioner from the United States without the procedures for removal identified in the INA." Pet. at 26, prayer ¶ 6. All five of the claims Petitioner asserts in the Petition, however, address Petitioner's arrest and detention pending removal proceedings. None of those claims address Petitioner's removability. Moreover, this Court generally lacks jurisdiction over questions of removability. See 8 U.S.C. § 1252(b)(2), (b)(9). As such, Respondent has not shown any ground for this Court to "[e]njoin Respondents from removing Petitioner from the United States without the procedures for removal identified in the INA" as requested in paragraph 6 of his prayer for relief, and his request for that relief is denied.

**6. ORDER**

Petitioner is presently in custody of Respondents in violation of the Constitution or laws or treaties of the United States; thus, a Writ of Habeas Corpus should issue pursuant to 28 U.S.C. § 2241.

IT IS THEREFORE ORDERED that:

1. The Petition for Writ of Habeas Corpus is GRANTED.
2. Respondents shall immediately release Petitioner **JUAN ANTONIO GONZALEZ (A# 094-305-522)** from custody and reinstate his release under the same conditions (if any) that were in place before his detention on July 15, 2026.
3. Within two days of the date of this Order, Respondents shall file with the Court a status report confirming Petitioner's release and return of any personal property and documents, as well confirming that Respondents have provided Petitioner with all his medical records in Respondent's possession, custody, or control, covering Petitioner's time in Respondent's custody.

4. The Court will issue on a separate form Judgment consistent with this Order. Any fee motion must be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412, and this Court's Local Rules. The Court retains jurisdiction to adjudicate any collateral enforcement issues.

IT IS SO ORDERED.

DATED: September 11, 2026

Dan Roberts
________________________________________

HON. DANIEL S. ROBERTS
UNITED STATES MAGISTRATE JUDGE